Las Monjas Racing Corporation, demandante y apelante, *v.* R. Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

Núm. 7730.—*Sometido:* Noviembre 9, 1938. *Resuelto:* Junio 21, 1939.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

El artículo 29 de la Ley núm. 11 de 1932 (Leyes de ese año, pág. 195), conocida como Ley Hípica de Puerto Rico, dispone:

"En los hipódromos de Puerto Rico se descontará el veinte y cinco (25) por ciento de las cantidades apostadas en las bancas alemanas, después de deducir el importe apostado a los caballos ganadores en las bancas respectivas, y el veinte y cinco (25) por ciento del total bruto o de las apuestas que se crucen en el *pool, subscription funds* o *mutuels*. El total bruto que se derive por concepto de dichos descuentos deberá ser distribuído en la siguiente forma: ochenta y cinco (85) por ciento para la corporación explotadora del hipódromo y quince (15) por ciento para los fondos de la Comisión Hípica Insular."

A pesar de que la Ley Hípica limitó a 25 por ciento el descuento del total bruto de las apuestas cruzadas en el *Subscription Fund,* la Comisión Hípica Insular, por vía de reglamentación, autorizó a los hipódromos a deducir de dicho total bruto el 33⅓ por ciento que reciben por concepto de comisión los agentes vendedores, y del 66⅔ por ciento restante, no del 100 por ciento como ordena la ley, se deduce entonces el 25 por ciento a que se refiere el artículo 29 supra, recibiendo de ese modo los agraciados el 75 por ciento del 66⅔ por ciento del total bruto del *Subscription Fund.*

La Ley de Rentas Internas, en su artículo 16 *a,* (inciso 3º. de la Ley núm. 11 de la Tercera Legislatura Extraordinaria de 1932, pág. 51), dispone que toda persona que sea agraciada con un *pool* o *subscription fund* deberá pagar un arbitrio de 10 por ciento sobre la cantidad total recibida, impuesto que retiene el hipódromo y lo paga en Tesorería.

La demandante, dueña y explotadora del hipódromo Las Monjas, celebró dos carreras en las fechas que se mencionan en las dos causas de acción de que consta la demanda, y al satisfacer el impuesto antes aludido trató de pagarlo tan sólo sobre los premios que en realidad perciben los agraciados a virtud del descuento de 33⅓ por ciento autorizado por la Comisión Hípica Insular, y no sobre el 75 por ciento que queda luego de hacerse el descuento prescrito por la sección 29. No aceptó el Tesorero el pago que ofreció la deman-dante y exigió el arbitrio sobre el 75 por ciento del total bruto de los boletos. Las Monjas Racing Corporation pagó bajo protesta y estableció este pleito.

Según la corte de distrito, la controversia se reduce a determinar si la orden o regla de la Comisión Hípica es o no válida; si es *ultra vires* y si la Comisión trascendió sus poderes al autorizar tal descuento, entonces la demandante asumió el riesgo de pagar el impuesto sobre el total bruto menos el 25 por ciento. El poder de reglamentación de la Comisión Hípica Insular, continuó diciendo la corte de distrito, está definido en el artículo 5 de la Ley Hípica de Puerto Rico, que dice:

"La Comisión Hípica Insular queda facultada para regularizar todo lo concerniente al deporte hípico y a tal objeto tendrá facultad para prescribir las reglas y condiciones por las cuales deberá regirse la celebración de carreras de caballos en Puerto Rico; para regla-mentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas en las bancas alemanas y *pools;* y para prescribir por reglamento los requisitos que deberán llenar las personas que desearen obtener y obtengan de la Comisión licencias de hipódromos, dueños de caballos, *jockeys, trainers* o cuadreros.

"La Comisión Hípica deberá seguir en sus investigaciones y ac-tuaciones los procedimientos señalados en la ley a las cortes de jus-ticia para la tramitación y despacho de sus asuntos.

"La Comisión Hípica Insular, en el ejercicio de sus deberes, y sus miembros cuando actúen en su representación quedan autorizados para citar testigos, tomar juramentos y declaraciones y obligar la comparecencia de testigos y la presentación de libros, cartas, docu-mentos, papeles, expedientes y todos los demás datos que se considera-

ren esenciales para un completo conocimiento del asunto objeto de investigación en relación con el deporte hípico.

"Todas estas facultades deberán prescribirse en un reglamento, el cual deberá ser aprobado por el Gobernador de Puerto Rico y una vez que dicho funcionario le imparta su aprobación, tendrá fuerza obligatoria. La Asamblea Legislativa se reserva la facultad de revisar y revocar dicho reglamento en todo o en parte cuando a bien lo tuviere."

La corte de distrito no halló nada en esta regla que autorice a la Comisión Hípica a violar el precepto específico contenido en la sección 29 de la Ley Hípica. El caso fué decidido a base de una excepción previa y la corte resolvió que la demanda no era susceptible de enmienda, y en su consecuencia, que la misma debía declararse sin lugar.

La apelante, luego de exponer los hechos, señala cuatro errores, a saber:

"1. Erró dicha corte al concluir y fallar que las sumas que representaban en cada juego de *subscription fund* celebrado la ⅓ parte del valor nominal de los boletos vendidos para cada uno de ellos, estaban sujetas al pago del arbitrio, que impone la sección 16 a de la Ley de Arbitrios entonces vigente.

"2. Igualmente erró dicha Corte al concluir y fallar que las reglas aprobadas por la Comisión Hípica y el Gobernador para regir dicho juego de *subscription fund* son nulas.

"3. Erró igualmente la Corte inferior al dejar de concluir y fallar que la apelante, en todo caso no era, ni es, la contribuyente ni deudora de dichos arbitrios y que el apelado, por este motivo, tampoco pudo legalmente reclamar y hacerle pagar los mismos;

"4. Igualmente erró dicha Corte al dictar sentencia desestimando la demanda e imponiendo las costas a esta apelante."

■■ Haciendo las inferencias necesarias, el argumento de la apelante es, en síntesis, que la única cantidad que puede ser gravada es aquella que de hecho los hipódromos distribuyen entre los agraciados en el *subscription fund*. La idea es que la contribución que trata de cobrar el Tesorero tan sólo puede fijarse en la suma que de hecho distribuye cada uno de los hipódromos. Por tanto, si se deduce el 25 por ciento, la suma a distribuirse entre los agraciados del *sub-*

*scription fund* sería el 75 por ciento, y si a esa suma se le descuenta primero el 33⅓ por ciento, la cantidad a repartir entre los agraciados sería el 75 por ciento del 66⅔ por ciento. Se da énfasis repetidas veces al hecho de que los hipódromos no reciben el 75 por ciento del total bruto pagado por los adquirentes de los boletos a razón de $1.00.

Convenimos con la corte inferior en que la Comisión Hípica Insular no puede hacer nada que infrinja los fines del artículo 29 de la Ley núm. 11 de 1932. Sin embargo, la apelante insiste no sólo en que la Comisión Hípica Insular no se ha excedido en sus facultades, sino también en que la contribución, de todos modos, se fija tan sólo en la cantidad recibida por los respectivos hipódromos.

Al igual que sucede en otros casos, el público podría renunciar el derecho a percibir el 75 por ciento fijado por el artículo 29 supra. *Modus et conventio vincunt legem.*

Empero, en el presente caso había una ley en vigor que disponía que el 18 por ciento de las sumas pagadas a los ganadores será retenido por cada uno de los hipódromos. Por consiguiente, cuando la Asamblea Legislativa dijo en efecto que el 75 por ciento del producto de la venta de los boletos sería pagado a los agraciados, ella quiso significar lo que dijo, y por necesidad tuvo que haber tenido en mente que el 10 por ciento debía descontarse del 75 por ciento que quedaba luego de deducir el referido 25 por ciento. La intención de la Asamblea Legislativa evidentemente fué, interpretando conjuntamente el contenido de las dos leyes, a saber, Ley núm. 11 de 1932 (pág. 195) y Ley núm. 11 de la Tercera Legislatura Extraordinaria de 1932 (pág. 51), que los hipódromos debían retener el 10 por ciento del 75 por ciento. La equidad considera como hecho aquello que debió haberlo sido.

*La sentencia debe ser confirmada.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.